# United States Court of Appeals for the Federal Circuit

---

**FLORA L. KERNEA,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2012-7142

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-2658, Chief Judge Bruce E. Kasold.

---

Decided: August 1, 2013

---

WILLIAM S. FOSTER, JR., BAKER BOTTS, LLP, of Washington, DC, argued for claimant-appellant.

ALLISON KIDD-MILLER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel and

MARTIE ADELMAN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

---

Before NEWMAN, DYK, and PROST, *Circuit Judges*.

PROST, *Circuit Judge*.

Flora L. Kernea appeals from a decision of the U.S. Court of Appeals for Veterans Claims ("Veterans Court"), which affirmed a decision of the Board of Veterans' Appeals ("Board") denying Ms. Kernea's claim for enhanced dependency and indemnity compensation under 38 U.S.C. § 1311(a)(2). We affirm.

## I. BACKGROUND

Ms. Kernea is the widow of Donald E. Kernea, a veteran of World War II who was honorably discharged from the Navy in April 1945 after being diagnosed with diabetes mellitus. At the time of his discharge, the Department of Veterans Affairs ("VA") found Mr. Kernea's diabetes to be service-connected and awarded him monthly payments based on a disability rating of 40%.

Beginning in 1950, and continuing for the next couple of decades, Mr. Kernea was hospitalized at various times as he suffered complications and declining health as a result of his diabetes. On multiple occasions, Mr. Kernea requested increases in his disability rating and payments, but his requests were denied. In April 1961, the Tennessee VA Regional Office again denied a request to increase Mr. Kernea's disability rating. In June 1961, however, the Director of the Compensation and Pension Service found "clear and unmistakable error" in the Regional Office's decision and increased Mr. Kernea's disability rating to 60%, effective March 14, 1961. Ultimately, Mr. Kernea's disability rating was increased to 100%, effective December 13, 1965.

Mr. Kernea died on February 23, 1969 as a result of complications from his service-connected diabetes. Ms. Kernea, who had been married to Mr. Kernea since 1953, applied for dependency and indemnity compensation ("DIC benefits") under 38 U.S.C. § 1310, which provides DIC benefits to survivors of a veteran who died from a service-connected or compensable disability. Ms. Kernea's request was granted in April 1969.

In June 2003, Ms. Kernea filed a claim under 38 U.S.C. § 1311(a)(2), which provides that a veteran's surviving spouse may qualify for *increased* DIC benefits if the veteran received "or was entitled to receive . . . compensation for a service-connected disability that was rated totally disabling for a continuous period of *at least eight years* immediately preceding death." *Id.* (emphasis added). When Mr. Kernea died in 1969, he had been rated totally disabled for less than four years. Nevertheless, Ms. Kernea's claim stated: "I request the VA grant me the additional $204.00[1] Eight year rule. The above veteran was 100% for over 8 years and I was married to him for over 8 years." J.A. 351. The VA denied Ms. Kernea's claim on July 3, 2003.

In the ensuing years, Ms. Kernea pursued her claim on appeal, first to the Board, then to the Veterans Court, and later on remand from the Veterans Court to the Board. In those proceedings, Ms. Kernea advanced two separate theories to support her claim that Mr. Kernea was "entitled to receive" a 100% disability rating for at least the last eight years of his life, as required by § 1311(a)(2). First, she claimed clear and unmistakable

---

[1] Congress has amended § 1311(a)(2) through the years to adjust the amount of increased DIC benefits. When Ms. Kernea filed her claim in 2003, the statutory amount was $204 per month. The current version of the statute provides for an increase of $246 per month.

error ("CUE") in the VA's disability rating decisions made during Mr. Kernea's lifetime. Second, she sought to substantiate her claim based on a "hypothetical entitlement" theory—*i.e.*, by demonstrating, on a hypothetical basis and without regard to claim dispositions during his lifetime, that Mr. Kernea was totally disabled for at least the last eight years of his life.

On July 15, 2010, the Board affirmed the VA's denial of Ms. Kernea's claim. Regarding her CUE claim, the Board found that Ms. Kernea had "not identified a specific error, or even a specific rating decision, that she believes contains CUE." J.A. 117. Nor had she "provided any reasons explaining why the result of an unidentified final rating decision would have been manifestly different but for the alleged error." *Id.* Concluding that Ms. Kernea's only argument in support of her CUE claim consisted of "bare statements that the Veteran should have been rated as 100 percent disabled at an earlier date," the Board denied her CUE claim without prejudice. J.A. 118.

As for Ms. Kernea's hypothetical entitlement claim, the Board found that it was barred by 38 C.F.R. § 3.10(f)(3), a regulation promulgated by the VA in 2005 that interpreted the phrase "entitled to receive" in § 1311(a)(2) as prohibiting hypothetical entitlement claims. In reaching this conclusion, the Board considered whether the application of § 3.10(f)(3) to Ms. Kernea's June 2003 claim was unlawfully retroactive. The Board analyzed this question using the retroactivity analysis set forth in *Princess Cruises, Inc. v. United States*, 397 F.3d 1358 (Fed. Cir. 2005). In *Princess Cruises*, we relied on the Supreme Court's opinion in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), to identify three factors for determining whether applying an agency's newly-issued regulation or ruling to conduct predating its issuance "would have retroactive effect," and therefore be presumptively improper. *See id.* at 1362, 1364. The three factors are: (1) "the nature and extent of the change of the law";

(2) "the degree of connection between the operation of the new rule and a relevant past event"; and (3) "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Princess Cruises*, 397 F.3d at 1364 (internal quotation marks omitted). Applying these factors to this case, the Board determined that: (1) the change in the law effected by § 3.10(f)(3) was not substantial because the regulation's interpretation of "entitled to receive" was consistent with, and merely clarified, the VA's interpretation of that phrase; (2) there was no indication that Ms. Kernea relied on the prior interpretation of § 1311(a)(2) to her detriment, or that she would have acted differently had the law not been changed; and (3) Ms. Kernea had fair notice of the change in law, could not have had "settled expectations" of the law, and could not have relied on the theory of hypothetical entitlement when she filed her claim because it had been the VA's "consistent policy to not allow this approach." J.A. 124-25. The Board therefore concluded that applying § 3.10(f)(3) to Ms. Kernea's claim did not have "an unlawful retroactive effect." J.A. 125.

After concluding that § 3.10(f)(3) applied retroactively to bar Ms. Kernea's reliance on a theory of hypothetical entitlement, the Board analyzed her claim solely on the basis of the disability ratings made during Mr. Kernea's lifetime. Because Mr. Kernea was not assigned a 100% disability rating until December 13, 1965, and he died less than four years later on February 23, 1969, he was not rated 100% disabled for "at least eight years immediately preceding death." § 1311(a)(2). Accordingly, the Board denied Ms. Kernea's claim for increased DIC benefits.

Ms. Kernea appealed to the Veterans Court, which affirmed the Board in a single-judge decision on March 14, 2012. The decision affirmed the Board's conclusion that Ms. Kernea could not substantiate her claim for enhanced DIC benefits through the hypothetical entitlement theory, explaining that "the Board's findings of fact are plausible

and not clearly erroneous, and the Board properly applied the *Princess Cruises* criteria when determining that § 3.10(f)(3) could be applied retroactively." J.A. 6. The decision also affirmed the Board's dismissal of Ms. Kernea's motion for revision based on CUE, finding that "the only statement in the record she identifie[d] as raising CUE merely asserts that her husband 'was entitled to the whole eight years' of benefits, a statement that posits no specific assertion of error." *Id.*

Following a motion for reconsideration by Ms. Kernea, a panel of the Veterans Court affirmed its prior decision and entered final judgment on May 30, 2012. *See* J.A. 1-3. Ms. Kernea appealed to this court.

## II. DISCUSSION

### A

The first issue Ms. Kernea raises on appeal is the denial of her claim for enhanced DIC benefits based on the hypothetical entitlement theory. Hypothetical entitlement claims, also referred to as "new claims," would permit the Board to adjudicate a claim for DIC benefits on a hypothetical basis, "without regard to claim filing or claim dispositions during the veteran's lifetime." *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 314 F.3d 1373, 1377 (Fed. Cir. 2003) ("*NOVA II*"). In other words, the Board could make a "*de novo* determination of the veteran's disability, upon the entirety of the record including any new evidence presented by the surviving spouse." *Hix v. Gober*, 225 F.3d 1377, 1380-81 (Fed. Cir. 2000).

The permissibility of hypothetical entitlement claims under § 1311(a)(2) has changed in recent years. In 2000, in our opinion in *Hix*, we held—on the basis of VA regulations that were in effect at the time—that hypothetical entitlement claims were allowed under § 1311(a)(2). *Id.* However, the VA later interpreted the phrase "entitled to

receive" as prohibiting hypothetical entitlement claims, and we affirmed that interpretation in January 2003 in our opinion in *NOVA II*. 314 F.3d at 1378. We found that the VA nevertheless had not adequately revised the implementing regulations for § 1311(a)(2) and therefore required the VA to conduct further rulemaking proceedings. *See id.* at 1381-82. As a result of our decision in *NOVA II*, the VA promulgated 38 C.F.R. § 3.10(f)(3), which again interpreted the phrase "entitled to receive" in § 1311(a)(2) as prohibiting hypothetical entitlement claims. *See* Dependency and Indemnity Compensation: Surviving Spouse's Rate; Payments Based on Veteran's Entitlement to Compensation for Service-Connected Disability Rated Totally Disabling for Specified Periods Prior to Death, 70 Fed. Reg. 72,211 (Dec. 2, 2005). The new regulation was effective December 2, 2005, and it applied to new claims for enhanced DIC benefits as well as claims pending before the VA on that date. *Id.* at 72,212. We sustained the VA's promulgation of § 3.10(f)(3) in *National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs*, 476 F.3d 872, 877 (Fed. Cir. 2007).

This case requires us to determine whether the amended regulation, 38 C.F.R. § 3.10(f)(3), can be applied retroactively to bar claims such as Ms. Kernea's that had already been filed before the amended regulation took effect. This is the first time we have addressed whether § 3.10(f)(3) should be given retroactive effect to a § 1311(a)(2) claim filed before the rule became effective. However, we have previously addressed this issue with respect to 38 U.S.C. § 1318, a statute that, like § 1311(a)(2), provides for certain DIC benefits if a veteran received or was "entitled to receive" compensation for a service-connected disability that was rated totally disabling for a certain amount of time immediately preceding death. *See Tarver v. Shinseki*, 557 F.3d 1371 (Fed. Cir. 2009); *Rodriguez v. Peake*, 511 F.3d 1147 (Fed. Cir. 2008).

In *Rodriguez* and *Tarver*, we addressed a rule, codified at 38 C.F.R. § 3.22, that the VA promulgated in 2000 in response to decisions of the Veterans Court interpreting the phrase "entitled to receive" in § 1318 as permitting hypothetical entitlement claims. The VA's new rule had the effect of reinterpreting § 1318 to prohibit hypothetical entitlement claims. *See Tarver*, 1373-74. In *Rodriguez* and *Tarver*, we applied the three-part test outlined in *Princess Cruises* to determine that § 3.22 could be applied retroactively to bar § 1318 claims based on a hypothetical entitlement theory. *See Rodriguez*, 511 F.3d at 1156 (finding that all three *Princess Cruises* factors weighed in favor of retroactive application of § 3.22, as amended in 2000, to claims for DIC benefits filed by survivors before the amendment took effect); *Tarver*, 557 F.3d at 1374-77 (finding that retroactive application of § 3.22 was permissible in a case "distinguishable from *Rodriguez* only in that [the claimant] filed her DIC claim after"—not before—the Veterans Court's decision interpreting § 1318 as permitting hypothetical entitlement claims).

As in *Rodriguez* and *Tarver*, we will use the three-part test from *Princess Cruises* to determine whether § 3.10(f)(3) should be given retroactive effect to bar Ms. Kernea's hypothetical entitlement claim under § 1311(a)(2).

1

The first *Princess Cruises* factor is "the nature and extent of the change in the law." *Princess Cruises*, 397 F.3d at 1364 (internal quotation marks omitted). Ms. Kernea contends that at the time she filed her claim in 2003, the VA's long-standing regulations, as we interpreted them in our 2000 opinion in *Hix v. Gober*, permitted hypothetical entitlement claims under § 1311(a)(2). *See Hix*, 225 F.3d at 1380-81 (holding that 38 C.F.R. § 20.1106, as then worded, was "dispositive of the interpretation of 38 U.S.C. § 1311," and "require[d] *de novo* determination of the

veteran's disability, upon the entirety of the record including any new evidence presented by the surviving spouse"); *see also Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1370 (Fed. Cir. 2001) (recognizing *Hix*'s holding that hypothetical entitlement claims were permitted under § 1311(a)(2)). Ms. Kernea argues that because § 3.10(f)(3), promulgated two years after she filed her claim, would prohibit her claim, the change in the law "has been significant; indeed, it has been total." Appellant's Br. 22.

We disagree with Ms. Kernea's characterization of the state of the law when she filed her claim in 2003. At that time, the VA had already taken steps to overturn the result in *Hix*. More specifically, the VA amended a regulation—38 C.F.R. § 20.1106—that we relied on in reaching our conclusion in *Hix*. At the time of our decision in *Hix*, § 20.1106 provided that "[e]xcept with respect to benefits under the provisions of 38 U.S.C. 1318 . . . , issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime." 38 C.F.R. § 20.1106. We reasoned in *Hix* that because the regulation specifically excluded § 1318 but failed to mention § 1311, the regulation permitted hypothetical entitlement claims under § 1311 but not under § 1318. *Hix*, 225 F.3d at 1380.[2] By the time Ms. Kernea filed her claim in 2003, however, the VA had amended § 20.1106 to explicitly refer to § 1311 and thereby bring the interpretation of

---

[2] The implementing regulation for § 1318 was consistent with this interpretation, with the VA having amended § 3.22 earlier in 2000 to prohibit hypothetical entitlement claims under § 1318. *See* DIC Benefits for Survivors of Certain Veterans Rated Totally Disabled at Time of Death, 65 Fed. Reg. 3388 (Jan. 21, 2000). The VA had not yet revised the implementing regulation for § 1311.

§ 1311(a)(2) in line with that of § 1318.[3]  Indeed, in our opinion in *NOVA II* in early 2003, we analyzed the VA's amendment to § 20.1106 and held that the VA "could properly construe the 'entitled to receive' language of §§ 1311(a)(2) and 1318 in the same way." *NOVA II*, 341 F.3d at 1378.  We further held that the VA "could properly construe the language of the two sections to bar the filing of new claims" (*i.e.*, hypothetical claims) and that the VA had "adequately explained that decision." *Id.* Thus, by the time Ms. Kernea filed her claim later in 2003, we had already affirmed the VA's decision to reinterpret § 1311(a)(2) as prohibiting hypothetical entitlement claims.

We recognize that the VA still had more work to do after our *NOVA II* opinion.  More specifically, in *NOVA II*, we faulted the VA for failing to amend the implementing regulations for § 1311(a)(2) to make them consistent with 38 C.F.R. § 3.22, the regulation implementing § 1318.  *See id.* at 1377, 1381.  We remanded for further rulemaking proceedings so that the VA could harmonize the implementing regulations for §§ 1311(a)(2) and 1318.  *Id.* at 1381.  This is what led the VA to promulgate § 3.10(f)(3), which included "a definition of the phrase 'entitled to receive' that . . . parallel[ed] the definition set forth in § 3.22(b)." 70 Fed. Reg. 72,211, 72,212 (Dec. 2, 2005).

---

[3]  As amended, § 20.1106 provided that "[e]xcept with respect to benefits under the provisions of 38 U.S.C. *1311(a)(2)* [and] 1318, . . . issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime."  Board of Veterans' Appeals Rules of Practice: Claim for Death Benefits by Survivor, 67 Fed. Reg. 16,309, 16,317 (Apr. 5, 2002) (to be codified at 38 C.F.R. § 20.1106) (emphasis added to indicate revision in text).

Despite our remand in *NOVA II* for further rulemaking proceedings, it was apparent at the time that hypothetical entitlement claims would no longer be allowed under § 1311(a)(2). In fact, in *NOVA II*, we instructed the VA to "continue to process claims for survivor benefits that would be rejected because they are based on the filing of new claims after the veteran's death, since we have found that the Department's interpretation of the statute as barring such claims to be permissible and reasonable, and assume that that view will be reflected in a new regulation under § 1311(a)(2)." *NOVA II*, 341 F.3d at 1381. Therefore, the first *Princess Cruises* factor weighs in favor of retroactive application of § 3.10(f)(3).

2

The second *Princess Cruises* factor is "the degree of connection between the operation of the new rule and a relevant past event." *Princess Cruises*, 397 F.3d at 1365 (internal quotation marks omitted). In laying out this factor, we explained that "not only must a new rule effect a significant change in the law, but this change must also have a significant connection with past events." *Id.* at 1365-66. Thus, if a change in the law "meaningfully alter[s] the consequences of relevant past events," it will weigh against retroactive application of the law. *Rodriguez*, 511 F.3d at 1155.

*Princess Cruises* provides an example of when this factor will weigh against retroactive application of a new rule. In that case, a new U.S. Customs rule required that cruise lines collect data concerning which passengers disembarked or boarded at certain ports, and the new rule created an evidentiary presumption to be applied when a cruise line could not provide the data. *Princess Cruises*, 397 F.3d at 1360. We found that the new rule had a significant connection with past events because before the rule, the cruise lines understood "that they had no need to create such data," and by failing to collect the newly

required data, the cruise lines would "forever and completely be unable to rebut the evidentiary presumption." *Id.* at 1366.

In contrast, in *Rodriguez* and *Tarver*, we found that the amendment of 38 C.F.R. § 3.22 to prohibit hypothetical entitlement claims under § 1318 did not have a significant connection with past events. *See Tarver*, 557 F.3d at 1375-76; *Rodriguez*, 511 F.3d at 1155. For example, in *Tarver*, we explained:

> Like the claimant in *Rodriguez*, Mrs. Tarver is "unable to point to anything she would have done differently had she known the effect of the 2000 amendment when she filed her claim." 511 F.3d at 1155. In order to prevail on her claim for section 1318(b) benefits, Mrs. Tarver had to demonstrate that her husband had a service-connected disability that was rated totally disabling for the 10 years immediately preceding his death. Mrs. Tarver does not seriously dispute the DVA's assertion that there is nothing she (or her husband) could have done between 1997, when [the Veterans Court's opinion permitting hypothetical entitlement claims under § 1318] was decided, and 2000, when the Secretary amended rule 3.22, that would have affected her eligibility for DIC benefits. If Mrs. Tarver's husband had known of the impending rule change when he filed his application for disability benefits, he might have brought his claim earlier or prosecuted it more vigorously in the first instance. But, of course, Mrs. Tarver's husband had no settled expectation of success on a hypothetical entitlement approach prior to the Veterans Court's first pronouncement on that issue in 1997. Accordingly, Mr. Tarver's failure to conform his conduct to the requirements of amended rule 3.22 cannot be attributed to the change in the law occasioned by that rule.

*Tarver*, 557 F.3d at 1375-76.

Just as in *Rodriguez* and *Tarver*, there is nothing Ms. Kernea could have done differently had she known the effect of the 2005 amendment when she filed her claim. The relevant conduct here took place in the 1960s—decades before § 1311(a)(2) was even enacted—when her husband filed his disability claims. In theory, Ms. Kernea's husband might have filed his disability claim "earlier or prosecuted it more vigorously in the first instance," *id.* at 1375, if he had known that hypothetical entitlement claims would be disallowed. But because he filed his claims decades before Congress enacted § 1311(a)(2), before this court decided *Hix*, and before the VA promulgated § 3.10(f)(3), his "failure to conform his conduct to the requirements of amended rule [3.10(f)(3)] cannot be attributed to the change in the law occasioned by that rule." *Id.* at 1376. Therefore, like in *Rodriguez* and *Tarver*, we find that the second *Princess Cruises* factor weighs in favor of applying § 3.10(f)(3) retroactively.

3

Finally, the third *Princess Cruises* factor requires us to take into account "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Princess Cruises*, 397 F.3d at 1366 (internal quotation marks omitted). Thus, where the state of the law is already moving against a claimant's position at the time he or she files a claim, logically, the considerations relevant to the first factor will also be relevant to this factor.

As we have detailed above, it was already apparent when Ms. Kernea filed her claim in 2003 that hypothetical entitlement claims would no longer be permitted under § 1311(a)(2). Specifically, by that time, we had already affirmed the VA's ability to interpret § 1311(a)(2) as prohibiting hypothetical entitlement claims. *See NOVA II*, 314 F.3d at 1378. The only thing left for the VA

to do was to revise the implementing regulations for § 1311(a)(2). *See id.* at 1381.

Under these circumstances, Ms. Kernea must be deemed to have had fair notice that her hypothetical entitlement claim might be disallowed. In addition, because the VA had already amended the regulation that provided the basis for our opinion in *Hix*, "any expectation that the statutory interpretation set forth in [*Hix*] was not subject to change would have been objectively unreasonable." *Tarver*, 557 F.3d at 1376. Therefore, we conclude that the third factor weighs against Ms. Kernea's position.

For these reasons, we find that all three of the *Princess Cruises* factors weigh in favor of applying § 3.10(f)(3) retroactively to prohibit Ms. Kernea's hypothetical entitlement claim. We therefore affirm the denial of her claim for enhanced DIC benefits based on the hypothetical entitlement theory.

B

In the alternative, Ms. Kernea challenges the dismissal of her CUE claim for failure to identify a specific error or a rating decision that she believes contains CUE. According to Ms. Kernea, the record demonstrates that she raised a valid CUE claim. Specifically, she contends that "a cursory reading of the record, supplemented by the VA's obligation to construe *pro se* pleadings sympathetically, would demonstrate that Ms. Kernea previously objected to at least the VA rating decision in 1961, a decision in which the VA has already acknowledged CUE." Appellant's Br. 33. The government counters that we lack jurisdiction to review whether Ms. Kernea raised a valid CUE claim because it raises a factual matter that is outside our appellate jurisdiction.

We agree with the government that we lack jurisdiction to consider whether Ms. Kernea raised a valid CUE claim. Under 38 U.S.C. § 7292(a), this court has jurisdic-

tion to review a decision of the Veterans Court "with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the decision." Absent a constitutional issue, this court "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). We have previously held that the interpretation of the contents of a claim for benefits is a factual issue over which we do not have jurisdiction. *Ellington v. Peake*, 541 F.3d 1364, 1371-72 (Fed. Cir. 2008). Here, Ms. Kernea's appeal of her CUE claim would require us to review and interpret the contents of her claim. Therefore, under our jurisdictional statute and precedent, we lack jurisdiction to revisit the Veterans Court's decision that Ms. Kernea failed to raise a valid CUE claim.

### III. CONCLUSION

For the foregoing reasons, the judgment of the Veterans Court is affirmed.

**AFFIRMED**

COSTS

Each party shall bear its own costs.